**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JONATHAN ALEJANDRO | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-900 |
| | : | |
| FREEDOM MORTGAGE | : | |
| CORPORATION, *et al.* | : | |

---

McHUGH, J.                                                                August 30, 2022

## <u>MEMORANDUM</u>

This is an action in which Plaintiff, proceeding *pro se*, alleges that Defendants engaged in unlawful activity including extending him a loan, transferring the servicing of the loan, failing to rescind the loan, harassing and defaming them, and damaging their credit. I previously granted a Motion to Dismiss in this case without prejudice. Plaintiff returns with an amended Complaint, adding the loan originator, Finance of America Mortgage LLC, as a Defendant and alleging: (1) civil fraud; (2) violation of the civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.; (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. and Regulation X, 12 CFR § 1024; (4) violation of TILA, 15 U.S.C. §§ 1601 *et seq*., and Regulation Z, 12 CFR § 1026; (5) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; (6) slander of title; (7) unjust enrichment; (8) civil conspiracy; (9) breach of fiduciary duty; (10) breach of contract and breach of duty of good faith and fair dealing; and (11) seeking a declaratory judgment in an action for quiet title. Defendants have filed renewed Motions to Dismiss. As Plaintiff did not remedy the deficiencies of his original claims and fails to state a claim as to his new claims, I will grant Defendants' Motions, this time dismissing Plaintiff's Complaint with prejudice.

## I.  Factual Allegations:

This case is a companion to another action filed by Plaintiff and his wife, Olivia L. Alejandro, before this Court.  The two cases concern different loans and properties, but contain otherwise identical allegations.  *See Jonathan R. Alejandro, et al. v. Freedom Mortgage Corporation, et al.*, Civ. No.: 22-cv-00897-GAM.  In this action, I previously dismissed the initial Complaint for failing to comply with Federal Rule of Civil Procedure 8.   ECF 21.  Plaintiff has returned with an Amended Complaint.

In this case, Plaintiff alleges that he obtained a loan on July 1, 2020 from Defendant Finance of America Mortgage LLC ("FAM").[1]  Am. Compl. ¶ 7.  Plaintiff executed a note evidencing that Loan and a mortgage securing the Loan against the property located at 320 West Fornance Street, Norristown, PA 19401.[2]  Note and Mortgage, Mot. to Dismiss, Ex. A, B, ECF 27. Plaintiff alleges that FAM transferred the Loan to FMC on March 22, 2021.  Am. Compl. ¶¶ 8, 26.

The allegations are otherwise identical to the Amended Complaint filed in the companion case.[3]  The thrust of Plaintiff's amended pleading seems be primarily an objection to FAM's transfer of the loan after origination.  Plaintiff alleges that this "transaction was never recorded in the county records." Am. Comp. ¶ 8.  He cites FAM's statements in an S-4 Registration Statement filed with the Securities and Exchange Commission regarding FAM's securitization and sale of mortgage loans it originates.  *Id.* at ¶¶ 23-24.  Plaintiff also complains regarding the lack of

---

[1] Plaintiff's Amended Complaint refers to Finance of America Mortgage as "FOA," and Defendants use the abbreviation "FAM."  I use FAM herein.

[2] I may consider the Note and Mortgage attached to the Motion to Dismiss because they form the basis of Plaintiff's claims.  *See Pension Ben. Guar. Corp. v. White Consol. Inds., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

[3] My factual summary and analysis here is substantially similar to my Opinion in the related case, with some variations to account for the nuances in timing and differences between the loans and properties.

endorsements on a version of the Note that he reviewed and claims that FAM "never loaned" money to him at all, but rather used his name and credit as part of a criminal enterprise designed to hide the transfer of the Loan to the government, rather than to FMC.  *Id.* at ¶¶ 23-28.  Plaintiff alleges that both FAM and FMC engaged in a scheme to profit off the origination of the Loan through the securitization process.  *Id*. at ¶¶ 29-31.

In addition, Plaintiff repeats his allegations that, following an audit of his personal documents, he discovered that he "had never received a complete alleged loan package after closing with FOA, in July 2020."  Am. Compl. ¶ 7.  He complains of not having received "a copy of the loan application with 2 wet ink blue signatures, recession [sic] documents along with all material documents associated."  *Id.*  Plaintiff further alleges that FMC ignored or failed to properly respond to his correspondence requesting various documents,[4] engaged in fraud, stated misrepresentations, and profited off their personal information.  *Id*. ¶¶ 10-21, 25-33.  Plaintiff alleges that, in December 2021, he requested documents through a Qualified Written Request (QWR) and that "FMC failed to provide such documents in violation of RESPA, TILA and U.S.C. Title 18, Part I, Chapter25, § 472, 473, 474, 474A, and 475 – and instead, only sent a copy of unauthenticated monthly billing statements in late February 2022 in an attempt to validate the debt."  *Id.* ¶ 10.[5]

Finally, Plaintiff persists in his meritless allegations, previously debunked in my earlier memorandum in the companion case, that he has sent FMC various "affidavits of truth," which

---

[4] Plaintiff states that FMC received Plaintiff's recission paperwork on January 4, 2022, but failed to respond, discharging Plaintiff from liability for having to pay on the mortgage.  Am. Compl. ¶ 12.

[5] Plaintiff cites federal criminal statutes pertaining to counterfeit securities: 18 U.S.C. §§ 472-475.  To the extent that Plaintiff may be attempting to rely on these statutes as providing a cause of action, no private right of action exists.  *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").)

FMC has not responded to, thus "making everything stated in AOT truth in the court of law per (231 Pa. Code § 1035.4) by tacit agreement."  Am. Compl. ¶¶ 15-19.[6]

Plaintiff brings federal claims against FMC and FAM for (1) violation of RICO; (2) violation of RESPA and Reg. X; (3) violation of TILA and Reg. Z; and (4) violation of the FCRA. In addition, Plaintiff includes claims against FMC and FAM for (5) slander of title; (6) civil fraud; (7) unjust enrichment; (8) civil conspiracy; (9) breach of fiduciary duty; (10) breach of contract and breach of duty of good faith and fair dealing; and (11) seeking a declaratory judgment in an action for quiet title.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiff is *pro se*.  There is a clear, well-established "obligation to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011), and *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, "[p]ro se litigants still must allege sufficient facts

---

[6] The provision of the Pennsylvania Code which Plaintiff cites describes the requirements for affidavits, but does not stand for the proposition that if the affidavit is not rebutted, everything averred must be taken as true.

In addition, Plaintiff repeats his erroneous argument that because the Defendants did not respond or object to various mailings, "they agree to Plaintiff's demands and new terms stated in Conditional Acceptance." Am. Compl. ¶ 21.  As I stated previously in my Opinion in the companion case: "This misunderstands the law of contracts, which provides that, 'to be a contract, the offer must be accepted.  An offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer.'" *Jonathan R. Alejandro, et al. v. Freedom Mortgage Corporation, et al*., Civ. No.: 22-cv-00897-GAM, Op. at 13, ECF 20 (quoting *In re Baum's Estate*, 117 A. 684, 685 (Pa. 1922)).

in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013).

Plaintiff has not responded to the Motions to Dismiss.  The Court will nevertheless analyze the Amended Complaint to determine whether it states a claim.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir.1991) (holding that a district court granting an unopposed motion to dismiss in a *pro se* case must ordinarily engage in an analysis of the merits).

### III.   Discussion:

Plaintiff's federal claims arise under Racketeer Influenced and Corrupt Organizations Act ("RICO"), Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), and the Fair Credit Reporting Act ("FCRA").  As discussed below, each of these claims fails as pleaded or is time-barred.  As the federal claims all fail, I decline to exercise supplemental jurisdiction over the state claims.

#### a.   Plaintiff's RICO claim fails

Plaintiff argues that Defendants' alleged conduct violated RICO, 18 U.S.C. § 1962(c), which "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 362 (3d Cir.2010) (citing 18 U.S.C. § 1962(c)).   To state a claim arising under RICO, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to business or property." *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 269 (3d Cir. 2009).

Plaintiff's RICO claim fails for a multitude of reasons.  First, Plaintiff cannot plausibly allege a "pattern of racketeering activity" where the facts alleged concerns only one allegedly

fraudulent transaction.  *See* 18 U.S.C.§ 1961 (5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity" within ten-year period); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) ("No defendant can be liable under RICO unless he participated in two or more predicate offense sufficient to constitute a pattern."). "[T]o prove a pattern ... a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) (citation omitted); *see Jung v. Bank of Am., N.A*., No. 3:16-CV-00704, 2016 WL 5929273, at *10 (M.D. Pa. Aug. 2, 2016) (dismissing RICO claim where "allegedly fraudulent mortgage and foreclosure on which Plaintiff bases her RICO claim constitutes a single transaction directed at a single piece of property affecting only Plaintiff.")

Second, Plaintiff has not adequately alleged the existence of a RICO enterprise.  "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Boyle v. U.S.*, 556 U.S. 938, 944 (2009) (citation omitted).  Such an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. . . separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583 (1981).  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 129 S.Ct. at 2244.

Here, Plaintiff fails to identify any relationships among those associated or how any Defendant participated in the management, direction, or operation of the purported enterprise.  *See Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co*., 996 F.2d 1534, 1539 (3d Cir. 1993).   In the general section of his Amended Complaint, Plaintiff vaguely alleges that

"Defendants formed a joint venture for their own profit much before Plaintiff even applied for the loan." ¶ 30.  In the RICO Count, Plaintiff states that "Defendants in a joint venture are selling unregistered securities consisting of Plaintiffs [sic] mortgage," but does not describe any details of this venture.  Am. Compl. ¶ 61.  Moreover, Plaintiff does not allege any separate purpose, and in fact expressly alleges that the enterprise has only one purpose: "the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents." *Id.*  ¶ 63. In the absence of a separate purpose, Plaintiff's claim fails.

Finally, Plaintiff pleads wire fraud and mail fraud as the predicate crimes.  *See* Am. Compl. ¶ 58 ("The Defendants scheme to defraud violates mail and wire fraud statutes 18 U.S.C. §§1341, 1343m").  When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).  Specifically, Rule 9(b) states "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9b's standard may be satisfied by "pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (cleaned up).

Here, Plaintiff has not alleged any of the elements of wire or mail fraud with the specificity needed to satisfy Rule 9b.  He generally states that Defendants violated the wire and mail fraud statutes by "mailing copies of loan documents and making fraudulent statement as to who the owner of note and mortgage is or was by making false reference to the note and mortgage which

they apparently have never been seen or produced." Am. Compl. ¶ 58. This lacks sufficient detail. Plaintiff describes the securitization of mortgages and the market that exists to purchase mortgages. He has not, however, shown how the securitization of his mortgage represents a predicate RICO act. Thus, the RICO claim fails.

Plaintiff also brings a claim under 18 U.S.C. § 1962(d) for conspiracy to violate RICO. Here, because Plaintiff does not properly allege a RICO claim, the conspiracy to commit RICO likewise fails. *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 373 (3d Cir. 2010) ("A § 1962(d) claim must be dismissed if the complaint does not adequately allege an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense) (cleaned up).

### b.  Plaintiff's TILA Claim Fails

Plaintiff further alleges that FMC and FAM violated TILA, 15 U.S.C. §§ 1601 *et seq*., by engaging in unlawful activity as part of the consumer credit transaction. I previously dismissed Plaintiff's TILA claim for failing to comply with Federal Rule of Civil Procedure 8. Moreover, in the companion case, I dismissed his identical TILA claim for failing to comply with Rule 12(b)(6) and noted multiple deficiencies his TILA claim in that related action. Plaintiff's Amended Complaint does not address or remedy any of the failings noted in my prior opinions in either case.

### i.  *Plaintiff's Damages Claim is Time Barred*

Damages claims for TILA are subject to a one-year limitations period, which, when related to alleged disclosure failures occurring during loan origination, runs from the date of origination. *See* 15 U.S.C. § 1640(e); 12 C.F.R. § 1026.2(a)(13). In the amended Complaint, Plaintiff repeats his allegation that FMC and FAM violated TILA by failing to provide disclosures at the closing of the loan, which occurred in July 2020. *See* Am, Compl. ¶ 7; 12 C.F.R. § 1026.17(b) (stating that the "creditor shall make disclosures before consummation of the transaction."). Specifically,

Plaintiffs allege that FMC and FAM failed to disclose notice of right to rescind; failed to disclose billing rights statement; and failed to disclose aspects of the finance charge. The suit here was filed over eighteen months after the closing of the loan. Despite being advised in my opinion in the companion case that equitable tolling could apply, Plaintiffs have not alleged that equitable tolling applies in their Amended Complaint. Therefore, his TILA damages claims will be dismissed with prejudice.

### ii.    Plaintiff Fails to State a Claim for Recission

Plaintiff also renews his recission claim. Plaintiff affirmatively pleads that he sent FMC recission paperwork, which was received on January 4, 2022. Am. Compl. ¶ 12. Plaintiff executed a purchase transaction for the Property and signed a Closing Disclosure, Initial Escrow Account Disclosure Statement and First Payment Letter at closing, acknowledging that he read and received the information at closing. Signed Loan Documents, Mot. to Dismiss, Ex. C.[7] TILA specifically exempts residential mortgage transactions from the right of rescission. 15 U.S.C. § 1635(e). A "residential mortgage transaction" is defined in TILA as: "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). The signed loan documents attached to the Motion to Dismiss indicate that this was a residential mortgage. *See* Mot. to Dismiss, Ex. C. Thus, Plaintiff had no right of rescission, and his rescission claim fails.

---

[7] I may consider the Loan Documents as Plaintiff's claim is based on the document and Plaintiff has not disputed the documents' authenticity. *See Pension Ben. Guar. Corp. v. White Consol. Inds., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

c.   Plaintiff's RESPA Claim Fails

Plaintiff asserts several RESPA, 12 USC §§ 2601 *et seq.*, claims against FAM and FMC. As a threshold matter, some of Plaintiff's RESPA claims are time-barred.  Plaintiff brings claims under 12 U.S.C. § 2607(d)(2) for receipt of allegedly excessive amounts for "settlement services." A RESPA claim under Section 2607 is subject to a one-year limitations period, running from the date the loan closes.  *See* 12 U.S.C. § 2614.  The limitations period begins to run "from the date of the occurrence of the violation," *id.*, which "begins at the closing of the loan," *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016).[8]  The loan closed on July 1, 2020, but the initial complaint was not filed until over eighteen months later, on March 8, 2022.  Plaintiff has not pleaded that equitable tolling applies.

Even were Plaintiff's claim not time barred, it independently fails.  To state a claim under RESPA's fee provisions, plaintiffs must allege that the complained of fee was paid "other than for services actually performed." 12 U.S.C. § 2607(b).  Here, Plaintiff pleads that "Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed," but provides no facts to support this conclusory, threadbare allegation. Am. Compl.  ¶ 75.  This is clearly inadequate under RESPA.  *See, e.g., Hartman v. Deutsche Bank Nat. Tr. Co*., No. CIV.A. 07-5407, 2008 WL 2996515, at *3 (E.D. Pa. Aug. 1, 2008) (dismissing RESPA claim where complaint contained only conclusory allegations).  For this reason, Plaintiff's RESPA claim should be dismissed.

---

[8] Plaintiff also claims violations of 24 C.F.R. § 3500.14.  Am. Compl. ¶¶ 78-79.  Effective July 2014, the HUD regulations for RESPA, previously found at 24 C.F.R. Part 3500, were withdrawn pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act.  79 Fed. Reg. 34224–01 (June 16, 2014). Responsibility for enforcing RESPA had transferred to the Consumer Financial Protection Bureau ("CFPB"), which implemented a regulation analogous to the HUD regulation cited by Plaintiff, 12 C.F.R. § 1024.14.  Any claim under 12 C.F.R. § 1024.14 is time barred, however, as subsection (a) makes clear that "[a]ny violation of this section is a violation of section 8 of RESPA (12 U.S.C. § 2607). . . . ," and thus would carry the same one-year limitations period.

Plaintiff's claim under 12 U.S.C. § 2606 for alleged failure to make required disclosures similarly fails because that provision lists certain credit transactions that are exempted from RESPA requirements and cannot form the basis for a cause of action.

Plaintiff also alleges that, in violation of RESPA, Defendant FMC has failed to respond to Plaintiff's Qualified Written Request ("QWR").   Under 12 U.S.C. § 2605(e), a loan servicer is required to respond to a QWR "relating to the servicing" of a loan.   A three-year statute of limitations governs the claim, so Plaintiff's claim is not time barred.  12 U.S.C. § 2614.  To state a valid claim under RESPA's QWR provision, Plaintiff must allege that he submitted a request that complies with 12 U.S.C. § 2605(e)(1)(B).  This section provides that a letter is a QWR if it is: "[A] …written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  Those requests must be related to servicing, i.e., "[related to] receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments."  *Id*. at § 2605(i)(3).

Plaintiff attaches a copy of the alleged QWR to his Amended Complaint.  Am. Compl., Ex. C.  However, while Plaintiff now refers to the letter as a QWR, it is actually a "debt validation letter" sent to FMC under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA").  *Id*.  The letter is titled "Debt Validation Letter" and clearly states in the first sentence that it is a notice "sent pursuant to the Fair Debt Collection Practices Act" and states that it is a request for "**VALIDATION**."  *Id*.  (emphasis in original).   At no point in the letter does Plaintiff

invoke his rights under RESPA. The inquiry seeks information about the validity of the loan and mortgage documents and does not relate to improper servicing. Accordingly, this correspondence does not qualify as a QWR under RESPA. *See e.g., Capozio v. JP Morgan Chase Bank, NA,* No. CV 16-5235, 2017 WL 5157532, at *4 (E.D. Pa. Nov. 7, 2017) (dismissing RESPA claim where plaintiffs failed to show they actually made a "qualified written request" as the term is defined in the statute).

 d. Plaintiff's FCRA Claim Fails:

 Plaintiff also brings a FCRA, 15 U.S.C. §§ 1681 et seq., claim against FMC. To bring a claim under 15 U.S.C. § 1681s–2(b), a plaintiff must establish three elements: (1) she notified the consumer reporting agency of the disputed information, (2) the consumer reporting agency notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information. *See, e.g., SimmsParris v. Countrywide Fin. Corp*., 652 F.3d 355, 359 (3d Cir. 2011). This subsection imposes certain duties on a furnisher "[a]fter receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s–2(b)(1). Under this subsection, notice "must be given by a credit reporting agency, and cannot come directly from the consumer." *SimmsParris*, 652 F.3d at 358.

 Here, Plaintiff attaches a copy of the report filed "with the credit agencies asking for an investigation into this matter," Am. Compl. ¶ 81, Ex. Q. Exhibit Q is a copy of a complaint filed with the Consumer Financial Protection Bureau ("CFPB"). But it does not mention any violations of the FCRA by FMC. *Id*. at Ex. P. Moreover, the CFPB is not a consumer reporting agency under the FCRA. *See Harris v. Pennsylvania Higher Educ. Assistance Agency / Am. Educ. Servs.,* No. CV 16-693, 2016 WL 3473347, at *7 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.,* 696 F. App'x 87 (3d Cir. 2017)

(non-precedential) (determining the Consumer Financial Protection Bureau is not a credit reporting agency under the FCRA).

Even if the CFPB were a consumer reporting agency, Plaintiff does not allege that the CFPB or any other consumer reporting agency notified FMC of their dispute or that FMC failed to investigate the allegedly inaccurate information.  *See generally* Am. Compl.  Accordingly, Plaintiff's FCRA claim fails.

> e.   Dismissal is with prejudice:

Having already provided Plaintiff with an opportunity to amend and state his claims with sufficient clarity, I deem it appropriate to dismiss the complaint with prejudice, because it would be prejudicial to Defendants to have to continue to litigate these claims.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility).

> f.   The Court Declines to Exercise Supplemental Jurisdiction Over Remaining
> State Law Claims:

Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims within [the court's] original jurisdiction that they form part of the same case or controversy."  However, when the district court has dismissed all claims over which it has original jurisdiction, it has authority to decline to exercise supplemental jurisdiction over related state law claims.  28 U.S.C. § 1367(c)(3).  While a court has discretion in making this determination, "[i]f it appears that the federal claim is subject to dismissal under [Rule 12(b)(6)] ... then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976).

Plaintiff asserts jurisdiction under 28 U.S.C. § 1331 and the United States Constitution.  Am. Compl. ¶¶ 1-2.  Plaintiff does not allege that diversity jurisdiction exists under 28 U.S.C. §

1332 and the Amended Complaint alleges that he is a Pennsylvania citizen and that FAM's principal place of business is in Pennsylvania. Am. Compl. ¶¶ 4-6. Plaintiff has not met his burden of showing that complete diversity exists. *See, e.g., McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (party asserting diversity jurisdiction bears the burden of showing complete diversity exists). Moreover, the litigation here is at an early stage. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) (noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

In the absence of diversity jurisdiction, and all federal claims having been dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims and the remaining state law claims will be remanded to state court.

g.  Plaintiff's Additional Motions:

As I find that Plaintiff's Amended Complaint has failed to state a claim under which relief could be granted, Plaintiff's Pre-Hearing Motion for Discovery, ECF 30, and Motion to Compel Arbitration, ECF 34, will be denied as moot.[9]

---

[9] I note that the Motion for Discovery was prematurely filed, as there was a pending motion to dismiss, and the Motion also ignored Fed. R. Civ. P. 34 (setting forth rules for serving discovery), Local Rule 26.1 (requiring certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute), and this Court's guidelines for conducting discovery (stating that discovery should be delayed where a motion could result in complete dismissal of a case).  The Motion to Compel Arbitration is similarly meritless, where Plaintiff produced no valid agreement to arbitrate, had affirmatively filed suit in this Court, and is seeking millions of dollars in damages.

14

**IV.      Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss are granted.


                                           /s/ Gerald Austin McHugh
                                         United States District Judge